IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KAREN HLYWIAK, et al.          :          CIVIL ACTION
                               :
          v.                   :
                               :
NATIONAL RAILROAD PASSENGER     :
CORPORATION, et al.            :          NO. 15-3815

MEMORANDUM

Bartle, J.                                    November 30, 2016

        Before the court are the motions of defendants National

Railroad Passenger Corporation d/b/a "Amtrak," New Jersey

Transit (collectively "Amtrak"),[1] Clean Tech Services Inc., and

Health Mats Co. for summary judgment.[2]  Plaintiffs Karen Hlywiak

and Peter Hylwiak brought this action in the Court of Common Pleas

of Philadelphia County under Pennsylvania negligence law following

Karen Hylwiak's trip and fall in 30th Street Station in

Philadelphia.  The defendants subsequently removed this action to

federal court.

---

1.  New Jersey Transit has agreed to indemnify, hold harmless,
and defend Amtrak from all personal injury liability which
"would not have been incurred but for the existence of the
commuter service provided by New Jersey Transit."  As such, we
will deal with Amtrak and New Jersey Transit collectively in
assessing their motion for summary judgment.

2.  Although Amtrak has filed a memorandum of law, statement of
undisputed facts, form of order, certificate of service, and
exhibits, it has not filed the underlying motion for summary
judgment.  We will nevertheless construe these filings as a
motion for summary judgment.

I.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant. See id. at 252. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." Id.

When ruling on a motion for summary judgment, we may only rely on admissible evidence. See, e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 94-95 (3d Cir. 1999). We view the facts and draw all inferences in favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004). However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

A party asserting that a particular fact "cannot be or is genuinely disputed" must support its assertion by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  In reviewing a motion for summary judgment, the court may consider any materials in the record but is not required to look beyond those materials cited by the parties.  See Fed. R. Civ. P. 56(c)(3).  It is not the responsibility of the court to "comb the record in search of disputed facts."  See N.J. Carpenters Pension Fund v. Hous. Auth. & Urban Redevelopment Agency, 68 F. Supp. 3d 545, 549 (D.N.J. 2014).  Our Court of Appeals has emphasized that "'[j]udges are not like pigs, hunting for truffles buried in' the record." Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

II.

The following facts are undisputed or viewed in the light most favorable to the plaintiff.  On July 5, 2013, between 5:00 P.M. and 5:30 P.M., plaintiff Karen Hlywiak entered 30th Street Station, which is owned by Amtrak, to take a New Jersey Transit train from Philadelphia.  Upon entering the building, she tripped on an uneven mat and fell, fracturing her wrist.

-3-

Immediately after falling, while she was still laying on the ground, Hlywiak observed a "hill" that ran the whole width of the mat and was at least one inch high.

Health Mats had supplied that mat to Amtrak for use at 30th Street Station.  Clean Tech provided daily maintenance services to the section of 30th Street Station encompassing the mat on which Hlywiak fell.  Health Mats and Clean Tech had no contact with one another.

The approximately 75 pound mat on which Hlywiak had tripped was not firmly fixed in place and was resting on the floor such that the edges of the mat were not flush with the ground. Proper cleaning of the floor surface below the mat was necessary to prevent the mat from migrating.  Migration of the mat can cause it to buckle and form small hills rather than lie flat on the floor. Normal pedestrian traffic cannot cause the mat to ripple or buckle.

Health Mats had supplied mats to 30th Street Station since approximately 1974 or 1975.  It visited 30th Street Station weekly to retrieve mats from one of the four quadrants of the building for laundering and to deliver replacement mats in their place.  It thus replaced the mats in each quadrant of the building once every four weeks.  Health Mats had last removed and replaced the mat on which Hlywiak had tripped approximately three weeks before the incident.

-4-

In delivering the mats each week, Health Mats provided a delivery ticket to Amtrak which stated in bold text that only Health Mats representatives should move the mats.  The delivery ticket also included an image indicating how to properly roll the mat.[3]  As the owner of Health Mats testified during a sworn deposition, "99 percent of the people roll them wrong" which "will cause problems."  In particular, rolling the mat and storing it on its edge can crush a portion of the mat causing it to buckle and lie uneven when placed on the floor.  Folding the mat before rolling it can also cause it to buckle.  A mat that has been improperly rolled and stored will sit unevenly on the ground when it is laid on the floor again for use.  Aside from providing a warning on the delivery ticket, Health Mats did not personally advise anyone at Amtrak to not move the mats.  Health Mats also did not train Amtrak or Clean Tech employees to roll or store the mats.

Amtrak oversaw maintenance and customer service for the entire station.  Clean Tech employees rolled up the mats, moved the mats, and then cleaned the area underneath those mats every night.  Clean Tech would also vacuum the mats once or twice per day.  By virtue of their contract, Amtrak and Clean Tech were jointly responsible for ensuring that passengers could safely move about 30th Street Station.

---

3.  The record does not include the exact language or a depiction of the image on the ticket.

Amtrak never instructed Clean Tech on how to move the mats, and Clean Tech did not train its employees on rolling or placing the mats.  Amtrak was aware that the mats would buckle and create hills from time to time.  Yet, Amtrak had no set policy for inspecting the mats to straighten out buckles and hills when they did occur.  Neither of these defendants designated any employee to monitor or inspect the condition of the mats during the day.  When a customer was injured in 30th Street Station, Amtrak's customer service department managed the emergency response and paperwork relating to the injury.

No one from Amtrak or Clean Tech ever called Health Mats for assistance with moving the mats.  If Amtrak had asked Health Mats to move the mats, the owner of Health Mats testified that it would have done so.  The owner of Health Mats also testified that he was not aware that the mats at 30th Street Station were being rolled and stored each night.  However, when Health Mats employees replaced the mats at 30th Street Station every week, the floor underneath the mats was always clean.

III.

Hlywiak asserts that her injuries were caused by the negligence of Amtrak, Health Mats, and Clean Tech.  Under Pennsylvania law, to prove a claim for negligence, the plaintiff has the burden to show "(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of

-6-

conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another."  See Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005).

        With regard to the first prong, Health Mats asserts that Hlywiak cannot make out a claim of negligence because it had no legal duty to control the premises of 30th Street Station.  But Hlywiak's negligence claim against Health Mats is not based on premises liability.  Instead, Hlywiak asserts that Health Mats breached a duty to exercise reasonable care in that it was uniquely able properly to roll and store the mats and knew for an extended period that someone had been moving and cleaning underneath the mats.  Nonetheless, it failed to instruct Amtrak that Amtrak was disregarding the notice on the delivery tickets.  In light of this knowledge, Hlywiak contends that Health Mats had an obligation to take additional action to prevent her injury.

        Like any actor engaged in the performance of an act, Health Mats had a duty to exercise reasonable care in placing its mats in 30th Street Station.  "[T]he actor, if he acts at all, must exercise reasonable care to make his acts safe for others." See Restatement (Second) of Torts § 4, cmt. b (Am. Law. Inst. 1965).  Reasonable care is "that which a reasonable man in his

-7-

position, with his information and competence, would recognize as necessary to prevent the act from creating an unreasonable risk of harm to another." See Restatement (Second) of Torts § 298.  In supplying mats for use at 30th Street Station each week, Health Mats certainly had a duty to act to prevent unreasonable risk to others.

The other defendants, Amtrak as the owner of 30th Street Station and Clean Tech as the company responsible for cleaning and maintaining the section of 30th Street Station where the plaintiff fell, do not contest their duty to control the premises.  Instead, they contend only that Hlywiak cannot establish her negligence claim because there is no evidence that they had actual or constructive notice of the hill in the mat.  They rely on Neve v. Insalaco's, 771 A.2d 786 (Pa. Super. Ct. 2001), which stated:

> In sum, to charge a defendant [ ] with
> constructive notice of a harmful condition a
> plaintiff need not produce positive testimony
> as to how long the defect existed if:  (1) the
> defect is of a type with an inherently
> sustained duration, as opposed to a transitory
> spill which could have occurred an instant
> before the accident; and (2) a witness saw the
> defect immediately before or after the
> accident.

See id. at 791.  Similar to the raised metal grate that caused the plaintiff to trip and fall in Neve, here the hill in the mat was not "a transitory spill which could have occurred an instant before the accident."  See id.  A 75 pound mat does not develop a hill in

an instant.  In fact, Health Mats' owner testified that even normal pedestrian traffic cannot cause the heavy mat to buckle.  Thus, the hill was of "an inherently sustained duration."  In addition, Hlywiak observed that hill immediately following the accident.  As such, there is evidence from which a reasonable jury could find that Amtrak and Clean Tech had constructive notice of the hill in the mat.

Health Mats also asserts that Hlywiak cannot show that it had actual or constructive notice that the mat had formed a hill because it only delivered mats to 30th Street Station once per week.  But the plaintiff only has the burden to prove that the defendant had actual or constructive notice of the harmful condition if the negligence claim is based on premises liability.  As already stated, Hlywiak asserts that Health Mats was negligent in failing to take reasonable care to protect the interests of those who traverse its mats despite knowing that someone was moving the mats to clean the floors underneath those mats.

There is sufficient evidence for a reasonable jury to find that Health Mats breached its duty to Hlywiak regardless of whether it had actual or constructive notice of the precise hill in the mat that caused Hlywiak to trip and fall.  An actor's "act or omission may be negligent because it involves an unreasonable risk of harm to another through the intervention of conduct on the part of the other, or of third persons, which a reasonable man in the

actor's position would anticipate and guard against." See
Restatement (Second) of Torts § 302, cmt. j.  The owner of Health
Mats testified that every time it delivered the mats, the floors
underneath the mats were always clean but that no one from Amtrak
had ever requested the assistance of Health Mats in moving the mats
to clean the floors.  The floor could not have been cleaned every
week unless someone moved the mats to clean the floor beneath the
mats.  Health Mats thus had "special knowledge of the qualities and
habits of a particular individual, over and above the minimum which
he is required to know." See Restatement (Second) of Torts § 302A,
cmt. c.  A reasonable jury could infer that Health Mats knew that
the mats at 30th Street Station were being moved.

     In addition, Health Mats knew that "99 percent of the
people" moved the mats incorrectly and that doing so "will cause
problems" including buckling.  A reasonable jury could find that
Health Mats had an obligation to anticipate and guard against
Amtrak's mishandling of the mats.

     Health Mats may argue to the jury that it discharged its
duty to take action "for the protection of the interests of others"
who come into contact with its mats by warning Amtrak not to move
the mats on the weekly delivery tickets.  See Restatement (Second)
of Torts § 4, cmt. b.  However, this warning was made preemptively,
rather than in response to the known behavior of Amtrak in moving
the mats.  It is for the jury to decide whether this warning to

-10-

Amtrak was sufficient to protect the interests of pedestrians who crossed over the mats each day, given that Health Mats knew that Amtrak was not heeding its warning.  Although an actor might not be negligent when he or she gives adequate warning, if the actor, "after giving warning, should realize that the other has not received or understood it or does not intend to obey it, . . . the actor is negligent if thereafter he persists in doing the act." See Restatement (Second) of Torts § 301, cmt. d.

　　　　The defendants do not specifically challenge the third and fourth elements of the negligence claim concerning causation and damages in their summary judgment motions.  As such, we need not consider them any further.

　　　　Accordingly, we will deny the motions of National Railroad Passenger Corporation d/b/a "Amtrak," New Jersey Transit, Clean Tech Services Inc., and Health Mats Co. for summary judgment.